```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
SCOTT SEYMOUR MATTHEW LIPSON,

                           Plaintiff,
                                                          DECISION AND ORDER
            -against-                                     14-cv-2586 (ADS)(GRB)

ROBERT J. BIRCH, ROBERT J. BIRCH, ESQ., P.C.,
CARTER WILLIAMSON,

                           Defendants.
----------------------------------------------------------------------X
```

**APPEARANCES:**

**Robert P. Macchia & Associates**
*Attorneys for the Plaintiffs*
98 Front Street
Mineola, NY 111501
   By:   Robert P. Macchia, Esq.
             Frank C. Lanzo, Esq.
             Priscilla DeLing Kam, Esq., of Counsel

**Robert J. Birch, Esq.,** *Pro Se*

**Carter Williamson, Esq.,** *Pro Se*

**NO APPEARANCES:**

*The Defendant Robert J. Birch, Esq., P.C.*

**SPATT, District Judge.**

       On April 23, 2014, the Plaintiff Scott Seymour Matthew Lipson (the "Plaintiff") brought this action against the Defendants for (1) violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*; (2) common law fraud; (3) unjust enrichment; (4) common law conversion; and (5) tortious conduct, including negligence.

       On July 23, 2014, the Defendant Robert J. Birch, Esq., *pro se* filed a notice of motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and 12(b)(2) to dismiss the complaint for lack of subject matter jurisdiction and lack of personal jurisdiction, respectively. However, the memorandum of law in support of that motion is signed by both Birch and co-defendant, Carter

Williamson, Esq. The Court construes the motion to dismiss as being made by both Birch and Williamson. In any event, this Court has discretion to consider documents filed in violation of procedural rules." Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C., 07 Civ. 0612 (BMC), 2011 WL 4529605, at *1 n. 1 (E.D.N.Y. Sept. 27, 2011)(citation and internal quotation marks omitted).

For the following reasons, that part of the motion to dismiss by Birch and Williamson for lack of personal jurisdiction is granted and the complaint is dismissed as against them without prejudice.

**I.     BACKGROUND**

Unless otherwise stated, the following facts are drawn from the complaint. "As this decision involves a motion to dismiss for lack of personal jurisdiction [], the Court will also consider the various affidavits submitted by the parties." Photoactive Prods., Inc. v. AL-OR Int'l Ltd., 99 F. Supp. 2d 281, 285 (E.D.N.Y. 2000).

A.  The Parties

The Plaintiff is a Canadian citizen lawfully admitted for permanent residence in the United States and is domiciled in Nassau County, New York.

The Defendant Birch is an attorney who resides in North Wales, Pennsylvania.

The Defendant Williamson is an attorney who resides in Bala Cynwyd, Pennsylvania.

The Defendant Birch P.C. is a corporation with an address of 617 Swede Street, Norristown, Pennsylvania 19401.

B.  Factual Background

In April 2012, the Plaintiff, desperate for money and facing homelessness, reached out to Williamson on a friend's referral. The Plaintiff, who suffers from mental illness, believed he may be entitled to a significant amount of money as he came from a wealthy family in Canada.

Williamson directed the Plaintiff to Birch and his law firm, the Defendant Robert J. Birch, Esq. P.C., which Williamson thought was better equipped and more experienced to counsel the Plaintiff.

After their first meeting, Birch agreed to represent the Plaintiff and requested $750 as compensation. Birch stated that any future fees would be negotiated between them. According to the Plaintiff, "[a]s [the] Defendants were aware that [the Plaintiff came] from a wealthy family, it is alleged that [they] conspired to exploit a desperate and destitute man who believed the Defendants would act in his best interest to claim any financial rights he may have had to his family's fortune." (Compl., at ¶ 22.)

The Plaintiff further alleges that, although Williamson referred the Plaintiff to Birch and Birch's law firm, he remained one of the Plaintiff's attorneys; was in constant contact with the Plaintiff; and has been referred to in communications as the Plaintiff's counsel.

The Plaintiff repeatedly requested a written retainer agreement and for the return of certain original documents which he had left in Birch's possession. However, the Plaintiff alleges that his requests were ignored.

Nonetheless, the Plaintiff alleges that Birch, in his capacity as the principal of Birch P.C., proceeded to "represent" Lipson. (Id. at ¶ 25.) In this regard, Birch contacted John Rosenthal ("Rosenthal"), the Plaintiff's brother-in-law and personal accountant, who resided in Toronto. Rosenthal represented to Birch that he was acting on behalf of the Lipson family in all negotiations between Lipson and his family.

After speaking with Rosenthal, Birch advised the Plaintiff of the existence of a family company, Ontario Limited 11084096 ("Ontario"), of which the Plaintiff was a shareholder. Birch further advised him that the Plaintiff's mother, Bertha Lipson, agreed to purchase the Plaintiff's shares in Ontario, thereby buying out his interests. The Plaintiff maintains that he had previously never heard of this company and never knew that he owned shares in it.

According to the Plaintiff, the Lipson family desired to buy out the Plaintiff's interest in Ontario and permit him to receive a lump sum from the sale in exchange for giving up any and all

3

existing and/or future interest in any of the family's property, tangible or intangible. The Plaintiff alleges that the Lipson family wished to have no future contact with him.

Desperate and on the verge of homelessness, the Plaintiff allegedly entrusted the Defendants to enter into negotiations with the Lipson family on his behalf. However, the Plaintiff alleges that the Defendants engaged in tortious conduct and were negligent by failing to act with reasonable care and due diligence in handling the valuation and sale of Ontario. For example, the Plaintiff allegedly requested that Birch retrieve five years of Ontario's company books for review before accepting any offers from the family. Instead, Birch produced three years of books, all of which were unaudited.

The Plaintiff notes that Rosenthal's accounting firm handled the books for each Lipson business, including Ontario. Rosenthal disclosed that he was related to all the parties and was therefore not "independent," yet, according to the Plaintiff, the Defendants unreasonably and negligently accepted the unaudited books at face value.

The Plaintiff also contends that the Defendants negligently failed to investigate any other financial or property interest – including any real estate, bank accounts, beneficiary accounts, corporations, stocks, will instruments, etc. – that may have been available to the Plaintiff. The Plaintiff also asserts that the Defendants failed to communicate with him regarding the negotiations. Rather, the Plaintiff maintains that he "communicated, via an interstate email from New Jersey to Pennsylvania, his concerns to Williamson that decisions were being made on his behalf without his consent as no one had contacted him to inform him of the status of negotiations with his family or to ask his opinions." (Id. at ¶ 31.)

The Plaintiff also alleges that the Defendants "pushed [him] to accept the offer which would, per the Defendants, eliminate a long, drawn out court battle and avoid unnecessary stress and conflict within the family" (Id. at ¶ 32.), even though the Defendants made no attempt to confirm the value of Ontario, or to investigate other possible financial rights the Plaintiff may have enjoyed.

4

Upon the advice of the Defendants, and desperate for money to survive, on July 30, 2012, the Plaintiff reluctantly signed a release statement and accepted his family's offer.

The Plaintiff contends that "[t]he Defendants' scheme to defraud [the Plaintiff] and convert his money is further evidenced by the fact that during the course of the negotiations with the Lipson family, neither Defendant made any attempt to procure any temporary stipend or funds for [him.] It is alleged that [the] Defendants' intent was to ensure [that the Plaintiff] remain destitute so that he would be more willing to acquiesce and sign the agreement. Once the sale took place, [the Plaintiff]'s family cut all ties and communication with him." (Id. at ¶ 32.)

According to the Plaintiff, he and Birch met only four times before the sale of his shares of Ontario took place in July 2012. Each meeting took place in Birch's office in Pennsylvania.

The Plaintiff further alleges that most, if not all, of the documents prepared to finalize the sale of his shares of Ontario "were authored solely by the representatives of the Lipson family." (Id. at ¶ 33.)

The Plaintiff alleges that the proceeds of the sale of the Ontario shares, which, after taxes, had a net value of $1,424,233, were originally intended to be deposited into an existing TD Bank account. Rather, the Plaintiff alleges, the Defendants directed the proceeds into several irrevocable trust accounts (collectively the "Trust Enterprise"), including an irrevocable trust in the amount of $1,000,000 at TD Wealth Management in Philadelphia, entitled "Lipson Scott M It R. Birch TTEE IMA," with an account number of 66-9050-01-5. The Trust Enterprise provided as follows: "The situs of all trusts hereunder shall be in the Commonwealth of Pennsylvania, and all questions as to the validity, construction and administration shall be determined by the Orphans' Court Division of Montgomery County, Pennsylvania."

Birch was named as the sole trustee of the Trust Enterprise, thereby guaranteeing Birch a salary for years to come and access to the *corpus* of the Trust Enterprise. The Plaintiff was not advised, nor

5

provided with a written document suggesting that he seek independent legal counsel on the propriety of having his attorney also serve as a trustee on his behalf.

The Plaintiff maintains that the Defendants never provided a credible explanation as to why the $1,424,233 was not placed into the originally intended account or why the proceeds were not deposited into one account in their entirety. While it appears several trust accounts exist, it is not clear as to whether the remaining $424,233 was placed in these accounts.

The Plaintiff asserts that it is "quite suspect that per Defendant Birch himself, some of the funds from the sale of the Ontario shares were inexplicably deposited directly into Birch's IOLTA account. These funds did not represent legal fees. Over the course of almost one year, [the Plaintiff] did receive[] $108,500.00, possibly from the $424,233.00 which is unaccounted for; however, it is unclear whether the $108,500.00 came from one of the Trust Enterprise accounts, Defendant Birch's IOLTA account, or an unknown account." (Id. at ¶ 35.)(internal citation omitted).

According to the Plaintiff, the Defendants failed to advise him of his options in terms of what could be done with the proceeds of the Ontario sale, and he was never asked whether he wanted the funds to be placed into an irrevocable trust. Rather, given his precarious circumstances, the Plaintiff "felt had he no choice but to sign." (Id. at ¶ 36.)

The Plaintiff further notes that the Defendants failed to adequately scrutinize the language of the trust agreement, as evidenced by the fact that it referenced a wife even though the Plaintiff was then single. The Plaintiff further notes that, under the trust agreement, upon his death, the principal of the Trust Enterprise would revert back to his family, "the very people who have isolated him both financially and emotionally, and have caused him tremendous pain." (Id. at ¶ 37.)

The Plaintiff alleges that, after the Trust Enterprise was established, Birch ignored or rejected his pleas for disbursements to pay for his necessities such as goods, medical expenses, and gas. For example, Birch refused to sign lease agreements on the Plaintiff's behalf, although his signature was necessary as the Trust Enterprise would have to be a guarantor. The Plaintiff further alleges that Birch

refused to give the Plaintiff money to establish a small trading business. The Plaintiff maintains that, in the year prior to the filing of the complaint, he had not received a disbursement from the Trust Enterprise.

C. The Pennsylvania State Court Action

In the Spring of 2013, the Plaintiff, represented by other counsel, commenced a *void ab initio* action in the Court of Common Pleas, Montgomery County, Orphans' Court Division, to void the Irrevocable Trust. According to the Plaintiff, "it was only . . . through the discovery process of the action to void the Trust Enterprise, that [the Plaintiff] was finally able to obtain and view the documents generated and executed during the course of the sale of Ontario and the establishment of the Trust Enterprise, including what appears to be a fraudulently altered retainer agreement." (Id. at ¶ 47.)

The purported Retainer Agreement, in the form of a letter from Birch to the Plaintiff, expressly states: "You also claim that there may be property in Florida and/or New York. I may need to travel to these states to investigate these claims as well as retain co-counsel." (Compl., Exh. 3, at 1.)

On August 1, 2014, Lipson moved to withdraw the petition in Pennsylvania State Court, "specifically conditioned on the mutual agreement that an order will by the Orphans' Court terminating the trust, and that the withdrawal is only with prejudice to the Orphans' Court and 'is not meant to affect [the Plaintiff]'s right to bring any claim and does not preclude issues pending, or which might be pled, in the matter of Lipson v. Birch, et al. in any Federal Court.'" (Machia Affid, at ¶ 6.) That motion is pending.

D. Procedural History in this Action

As noted above, on April 23, 2014, the Plaintiff filed the instant complaint raising various claims under federal and state law.

On July 23, 2014, Birch and Williamson moved pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(2) to dismiss for lack of subject matter jurisdiction and personal jurisdiction, respectively. They argue that the Plaintiff, by executing the trust agreement which contained the forum selection clause,

7

subjected himself to the exclusive jurisdiction of the Orphans' Court of Montgomery County. Birch and Williamson further argue that they are not subject to personal jurisdiction in this Court under the New York Civil Practice Law and Rules ("CPLR") § 302, nor do they have the requisite minimum contacts with New York to support this Court's exercise of personal jurisdiction over them.

On August 14, 2014, the Clerk of the Court noted the default of the Defendant Robert J. Birch, Esq., P.C. On August 15, 2014, the Plaintiff moved for a default judgment against Robert J. Birch, Esq., P.C. On August 21, 2014, the Court referred the motion for a default judgment to United States Magistrate Judge Gary R. Brown for a recommendation as to whether the motion for a default judgment should be granted, and if so, (1) whether damages should be awarded, including reasonable attorney's fees and costs, and (2) whether any other relief should be granted.

The Court now considers the motion to dismiss by Birch and Williamson.

## II. DISCUSSION

A. The Motion to Dismiss Based on the Forum Selection Clause

As a threshold matter, the Court reviews the proper lens through which to view that part of the motion to dismiss for lack of subject matter jurisdiction based on the forum selection clause.

The Second Circuit has acknowledged that no Federal Rule of Civil Procedure is designed to address the enforcement of such a clause. See New Moon Shipping Co. v. MAN B & W Diesel, 121 F.3d 24, 29 (2d Cir. 1997). "The Supreme Court has not specifically designated a single clause of Rule 12(b) as the 'proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause,' nor [has the Second Circuit]." Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 822 (2d Cir. 2006)(quoting New Moon Shipping, 121 F.3d at 28, citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 589, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991), and M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 4, 9–19, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)).

Prior to the Second Circuit's decision in New Moon Shipping, courts in this Circuit generally treated motions to dismiss based on a forum selection clause as being brought under Rule 12(b)(1) for

8

lack of subject matter jurisdiction, or under Rule 12(b)(3) for improper venue. Asoma Corp., 467 F.3d at 822 (citations omitted). However, in New Moon Shipping, the Second Circuit "refused to pigeonhole these claims into a particular clause of Rule 12(b)." Id. Instead, the "burden [is] on the plaintiff, who brought suit in a forum other than the one designated by the forum selection clause, to make a 'strong showing' in order to overcome the presumption of enforceability." New Moon Shipping, 121 F.3d at 29.

"As the Supreme Court noted in Bremen, a mandatory and exclusive forum selection clause does not oust the court of its jurisdiction over the parties or the claims." Am. Int'l Grp. Europe S.A. (Italy) v. Franco Vago Int'l, Inc., 756 F. Supp. 2d 369, 379 (S.D.N.Y. 2010). It merely prompts the court to answer the threshold question of "whether that court should . . . exercise[ ] its jurisdiction to do more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause." 407 U.S. at 12, 92 S. Ct. 1907. As the Second Circuit noted in New Moon Shipping, "parties have no power by private contract to oust a federal court of jurisdiction otherwise obtaining." 121 F.3d at 28 (citations omitted).

"Therefore, a defendant asking that a claim be dismissed because of a forum selection clause is not claiming that the court lacks subject-matter jurisdiction over the claim or *in personam* jurisdiction over the defendant   Rather, the defendant is asking the court to enforce the contractual rights and obligations agreed upon by the parties." Am. Int'l Grp. Europe S.A. (Italy), 756 F. Supp. 2d at 379 (internal citations omitted).

As the Supreme Court and the Second Circuit have made clear, there is a strong federal policy in favor of enforcing forum selection clauses. See e.g. Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993)(noting the "strong public policy in favor of forum selection and arbitration clauses"). Among other things, judicial enforcement of such clauses removes uncertainty in economic transactions and ensures that the parties' expectations are fulfilled. See Aguas Lenders Recovery Grp., LLC v. Suez, S.A., 585 F.3d 696, 700 (2d Cir. 2009).

9

Accordingly, "forum selection clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances," TradeComet.com LLC v. Google, Inc., 647 F.3d 472, 475 (2d Cir. 2011)(quoting M/S Bremen, 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 51)(internal quotation marks omitted), or unless the forum selection clause "was invalid for such reasons as fraud or overreaching," Bense v. Interstate Battery Sys. of Am., Inc., 683 F.2d 718, 721 (2d Cir. 1982)(internal quotation marks omitted).

Specifically, to determine whether to dismiss claims based on a forum selection clause, the Court must undertake a four-part inquiry. See Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007). The moving party must show (1) the clause was reasonably communicated to the party resisting enforcement; (2) the clause is mandatory and not permissive; and (3) the claims and parties in the suit are subject to the clause. Id. If these three elements are established, the forum selection clause is presumptively enforceable and the burden shifts to the non-moving party to "mak[e] a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" Id. at 383–84 (quoting M/S Bremen, 407 U.S. at 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513). This is a heavy burden, and "[w]here forum selection clauses grow out of arms-length negotiations between sophisticated business persons, such a showing is difficult to make." Russbeer Int'l LLC v. OAO Baltika Brewing Co., 07–CV–1212 (CBA), 2008 U.S. Dist. LEXIS 25471, at *12, 2008 WL 905044 (E.D.N.Y. Mar. 31, 2008).

Here, the Plaintiff does not appear to dispute the second element of the moving party's initial burden – namely, that the clause is mandatory and not permissive. However, it is unclear whether all of the claims raised in this action fall within the scope of the forum selection clause. See Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993)("if the substance of their claims, stripped of their labels, does not fall within the scope of the [forum selection] clauses, the clauses cannot apply.")

In any event, the Court finds that Birch and Williamson have failed to discharge their burden to show that the forum selection clause was reasonably communicated to the Plaintiff, the party resisting

10

enforcement. To the contrary, based on the allegations contained in the complaint, it can be inferred that Birch and Williamson failed to adequately explain to the Plaintiff the various provisions of the trust agreement, including the forum selection clause. Accordingly, the Court finds, as a matter of contract law, that Birch and Williamson cannot avoid this litigation on the basis of the forum selection clause contained in the trust agreement.

B.  Subject Matter Jurisdiction

Although Birch and Williamson do not challenge the Court's subject matter jurisdiction other than through the incorrect prism of the forum selection clause, the Court nonetheless briefly reviews the subject matter jurisdiction here. Indeed, subject matter jurisdiction can never be waived or forfeited. ACCD Global Agriculture, Inc. v. Perry, No. 12 Civ. 6286 (KBF), 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013)(quoting Dumann Realty, LLC v. Faust, No. 09 Civ. 7651 (JPO), 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013)(citing Gonzalez v. Thaler, —U.S. —, 132 S. Ct. 641, 648 (2012); Henderson ex rel. Henderson v. Shinseki, — U.S. —, 131 S. Ct. 1197, 1202 (2011)). Federal courts are mandated to *sua sponte* examine their own jurisdiction at every stage of a litigation.

In this case, the Court finds that the parties have satisfied the requirements for diversity jurisdiction. See 28 U.S.C. § 1332; Nichairmhaic v. Dembo, 3:13-CV-01184 (JCH), 2014 WL 2048585, at 3-4 (D. Conn. May 19, 2014). First, the amount in controversy exceeds $75,000, exclusive of interest and costs. Second, the parties satisfy the citizenship requirement since the Plaintiff is a citizen of a foreign state lawfully admitted for permanent residence in the United States and domiciled in New York and Birch and Williamson are citizens of Pennsylvania. Compare Gullas v. 37-31 73rd St. Owners Corp., 12-CV-2301 (DLI)(VVP), 2012 WL 1655520, at *2 (E.D.N.Y. May 10, 2012)("Courts do not have diversity jurisdiction over an action between foreign citizens 'who are lawfully admitted for permanent residence in the United States and are domiciled in the same State' as an opposing party")(citing 28 U.S.C. § 1332(a)(2)).

Alternatively, pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over the Plaintiff's RICO claims, and concordantly, supplemental jurisdiction over the Plaintiff's state law claims. Cf. Olympicorp Int'l, LLC v. Farm Rich Foods, LLC, 13-CV-4094 (ENV), 2013 WL 6194238 (E.D.N.Y. Nov. 25, 2013)("Lacking a valid RICO claim to support federal question jurisdiction-and therefore pendant jurisdiction over related state law claims, subject matter jurisdiction over the state law claims might still be founded if plaintiff can establish diversity.")(internal citation omitted), appeal dismissed (Mar. 31, 2014).

C. Personal Jurisdiction

A plaintiff opposing a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) bears the burden of showing that the court has jurisdiction over the defendant. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007); Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1994). Where, as here, there has been no evidentiary hearing and the jurisdictional issue is addressed in affidavits, the plaintiff need only make a *prima facie* showing that the defendant is amenable to personal jurisdiction. A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79 (2d Cir. 1993). However, eventually personal jurisdiction must be established by a preponderance of the evidence, either at an evidentiary hearing or at trial. Id. at 79-80; see Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999). The Court must accept the allegations of the plaintiff's complaint and affidavits as true, and all doubts are resolved in favor of the plaintiff, notwithstanding any controverting presentation by the moving party. A.I. Trade, 989 F.2d at 79-80; Cavu Releasing, LLC v. Fries, 419 F. Supp. 2d 388, 391 (S.D.N.Y. 2005).

The Plaintiff does not contend that Birch and Williamson's "contacts with New York are so continuous and systematic that [he] is subject to the jurisdiction of courts in New York on a general jurisdiction theory." Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC, 450 F.3d 100, 103 (2d Cir. 2006)(internal citation omitted). Instead, he relies on a theory of specific jurisdiction, and, therefore, the issue of whether Birch and Williamson are subject to personal jurisdiction in this Court

must be analyzed individually for each cause of action. Ainbinder v. Potter, 282 F. Supp. 2d 180, 184 (S.D.N.Y. 2003); see also Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd., 475 F. Supp. 2d 456, 460 (S.D.N.Y. 2007)("personal jurisdiction must be determined on a claim-by-claim basis").

1. Personal Jurisdiction over Birch and Williamson with Respect to the RICO Claims

As discussed above, the instant action invokes both federal question and diversity jurisdiction. The forum state's rules of personal jurisdiction apply in federal question cases, unless the applicable federal statute provides for nationwide service of process. See Sunward Elecs. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004)

18 U.S.C. § 1965(b) allows for the nationwide service of process for claims brought under the civil RICO statute, 18 U.S.C. § 1964, when "the ends of justice require that other parties residing in any other district be brought before the court." 18 U.S.C. § 1965(b). However, in order for § 1965(b) to apply, the Second Circuit has found that at least one defendant must satisfy the test for personal jurisdiction set forth in 18 U.S.C. § 1965(a). PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65, 71 (2d Cir. 1998). Therefore, only in cases where at least one RICO defendant "resides, is found, has an agent, or transacts his affairs" in the district in which the court is located, 18 U.S.C. § 1965(a), can nationwide service of process be effected with respect to the other RICO defendants — and then only if the "ends of justice" require it.

In this case, neither Birch nor Williamson reside in the Eastern District of New York or have employed an agent in the district. Nor does the Plaintiff allege that any of them can be "found" in the district. Finally, there is no allegation that at least one RICO defendant transacts his affairs in the Eastern District. Under these circumstances, the Court concludes that the Plaintiff has not met his burden of making out legally sufficient allegations of personal jurisdiction under § 1965(b) with respect to his RICO claims as against Birch and Williamson. See Segal v. Bitar, 11 CIV. 4521 (LBS), 2012 WL 273609, at *3 (S.D.N.Y. Jan. 30, 2012). Therefore, the Court grants that part of the motion

by Williams and Birch to dismiss the Plaintiff's RICO claims for lack of personal jurisdiction and dismisses those claims without prejudice.

2. Personal Jurisdiction over Birch and Williamson with Respect to the New York State Claims

District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis, first determining whether there is a federal or state statutory basis for jurisdiction, and second deciding whether the exercise of jurisdiction comports with due process. Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005).

Here, the Plaintiff's claims under New York State law invoke diversity of citizenship jurisdiction, or, alternatively because the complaint initially raised RICO claims, supplemental jurisdiction as codified in 28 U.S.C. § 1367(a). Whether viewed as invoking diversity of citizenship jurisdiction or supplemental jurisdiction, the New York long-arm statute applies with respect to the Plaintiff's state law claims. Atl. Mut. Ins. Co. v. M/V HUMACAO, 169 F. Supp. 2d 211, 217 n. 2 (S.D.N.Y. 2001)(The New York long-arm statute establishes the personal jurisdiction analysis in *diversity* cases. Nonetheless, in a non-diversity case as here, involving § 1367(a) supplemental jurisdiction over a third-party, if the third-party claim asserts only state law causes of action it seems logical that, just as in diversity cases, the federal court should address the amenability to suit of the foreign third-party defendant in accordance with the law of the forum state.")(internal citation omitted); cf. Gill v. Three Dimension Systems, Inc., 87 F.Supp.2d 1278, 1284 (M.D. Fla. 2000)(in securities fraud case where the plaintiff asserted only state law claims against two defendants pursuant to § 1367(a)'s grant of supplemental jurisdiction, court evaluated personal jurisdiction over those two defendants under Florida's long-arm statute and Constitutional minimal contacts analysis).

Here, the Plaintiff seeks for this Court to exercise personal jurisdiction over Williamson and Birch under three provision of New York's long-arm statute, CPLR § 302(a)(1), (a)(3)(i), and (a)(3)(ii). The Court addresses each potential basis for personal jurisdiction in turn.

14

a. CPLR § 302(a)(1)

As relevant here, N.Y. CPLR § 302(a)(1) provides: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state." To determine the existence of jurisdiction under this subsection, the Court must decide "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007)(internal citation omitted). Under the first prong, the Court looks to the "'totality of the defendant's activities within the forum'" "to determine whether it has engaged in "'purposeful activity'" there. Id. (internal citations omitted). Under the second prong, the Court inquires whether there is "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Id. (internal citation omitted).

Here, to establish personal jurisdiction under CPLR 302(a)(1), the Plaintiff relies on the fact that Birch and Williamson maintained an attorney-client relationship with him after he moved to New York in September 2012. In support of that assertion, the Plaintiff cites Fischbarg v. Doucet, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 880 N.E.2d 22 (2007). There, California-based defendants engaged Fischbarg, a New York attorney who had an office only in New York, to represent them in an action in Oregon. 9 N.Y.3d at 377–78. The defendants never traveled to New York but spoke with Fischbarg by telephone and email. Id. When a dispute over fees arose, Fischbarg brought a collection action in New York against his former clients. In response to their challenge to personal jurisdiction, the New York Court of Appeals held that the defendants' "New York contacts comprised 'the purposeful creation of a continuing relationship with a New York [entity]'" and therefore found the exercise of personal jurisdiction to be proper. Id. at 381 (quoting George Reiner & Co. v. Schwartz, 41 N.Y.2d 648, 653, 363 N.E.2d 551 (1977)).

15

Similarly, in George Reiner, the New York Court of Appeals upheld the exercise of personal jurisdiction over a salesman who traveled to New York for an employment interview, obtained a job with the New York company, and then never returned to New York during his four years of employment with the New York company. 41 N.Y.2d at 649. Although his intersection with New York was short-lived, it "included interviewing, negotiating and contracting — the purposeful creation of a continuing relationship with a New York corporation." Id. at 653.

Birch and Williamson cite Mayes v. Leipziger, 674 F.2d 178, 184 (2d Cir. 1982). In Mayes, the Second Circuit held that a California-based defendant attorney, who represented the New York-based plaintiff in a legal matter in California with the aid of telephone calls and mail to New York, was not subject to New York personal jurisdiction: "So far as we are aware, no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York to perform services outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York." Id. at 185.

In the Court's view, this case is more on par with Mayes than with Fischbarg or George Reiner. The pleadings and affidavits indicate that the Plaintiff contacted and retained Birch and Williamson, two Pennsylvania lawyers, who performed services outside of New York. There is also no indication that Birch, in his role as Trustee of the Trust Enterprise, projected himself into New York State.

Mayes makes clear that "letters and calls to New York" to perform "non-New York services" do not support personal jurisdiction under Section 302(a)(1) against non-resident defendants. 674 F.2d. at 185. Similarly, the e-mail exchanges here are insufficient to support personal jurisdiction under Section 302(a)(1) against Birch and Williamson, who are non-resident defendants.

In short, the Court finds that the Plaintiff fails to satisfy the first statutory prong of Section 302(a)(1), namely that Birch and Williamson "transact[ed] any business in New York."

b. CPLR § 302(a)(3)(i-ii)

Of relevance here, CPLR § 302(a)(3)(i-ii) provides, in pertinent part:

(a) [A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent, . . . (3) commits a tortious act without the state . . . if he . . . (i) regularly does or solicits business, or engages in any other persistent code of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . .

Thus, in order to assert personal jurisdiction over a defendant under this subsection, the plaintiff must first show that the defendant committed a tortious act outside New York and that defendant's tortious activity caused injury to person(s) or property inside New York. Once these two elements are satisfied, the plaintiff must show either that: 1) the defendant regularly does business in New York; engages in a persistent course of conduct in New York; or derives substantial revenue from commercial activities in New York, see Girl Scouts of U.S. v. Steir, 102 Fed. Appx. 217, 220, No. 03 CV 9087, 2004 WL 1406307, at *3 (2d Cir. June 24, 2004); or that 2) the defendant should have reasonably expected the act to have consequences in the state and defendant derives substantial revenue from interstate commerce. See Kernan v. Kurz–Hastings, Inc., 997 F. Supp. 367, 372 (W.D.N.Y. 1998); see also Fantis Foods, Inc. v. Standard Importing Co., 49 N.Y.2d 317, 325–26, 402 N.E.2d 122, 124–25, 425 N.Y.S.2d 783, 786 (1980)(noting "[i]t has, however, long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there").

Here, while the Court finds that the Plaintiff may have adequately alleged tortious conduct, including conversion and negligence that caused injury to the Plaintiff in New York, the Court finds that it cannot properly exercise long-arm jurisdiction over Birch and Williamson pursuant to § 302(a)(3)(i-ii).

First, the record does not show that Birch and Williamson regularly do or solicit business in New York, and it is devoid of any evidence demonstrating either a course of conduct in New York, persistent or otherwise, on their part. Further, while the Plaintiff alleges that Birch and Williamson seek or have been paid in excess of $240,000 for their services rendered on behalf of the Plaintiff, there is no evidence that they rendered any of these services "in the state" – that is, New York. To the contrary, every alleged in-person interaction between the Plaintiff, and Birch and Williamson, took place in a jurisdiction other than New York. The fact that Birch e-mailed the Plaintiff, and cc-ed Williamson, while the Plaintiff resided in New York does not, without more, establish a basis for personal jurisdiction over them under § 302(a)(3)(i).

Second, the Court finds that the Plaintiff fails to show that Birch and Williamson had a reasonable basis to expect their actions to have consequences in New York. As stated by then District Court Judge Denny Chin in <u>Energy Brands Inc. v. Spiritual Brands, Inc.</u>, 571 F. Supp. 2d 458 (S.D.N.Y. 2008):

> An objective test — and not a subjective test — governs whether a defendant expects or should reasonably expect his act to have consequences within New York." The mere likelihood or foreseeability that a defendant's product will find its way into New York is alone insufficient to satisfy § 302(a)(3)(ii). Foreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market. A court must assess whether defendant purposefully availed himself of the benefits of the laws of New York, to the extent that he would reasonably anticipate being haled into a New York court. New York courts will assess whether the facts demonstrate that defendant should have been aware that its product would enter the New York market.

<u>Id.</u> at 467-68 (internal citations and quotation marks omitted).

Here, the Plaintiff has offered no evidence that Birch and Williamson purposefully availed themselves of the benefits of the laws of New York State. In this regard, Birch and Williamson point to no actions or meetings that took place in New York. There is also no indication that they have property, bank accounts, offices, or employees located within the state's boundaries. Finally, while the "Retainer Agreement" contemplated the possibility that Birch and Williamson would travel to New York to investigate any real property assets the Plaintiff's family owned, there is no allegation that

18

either Birch or Williamson did in fact travel to New York. In sum, the Court concludes that the Plaintiff has failed to make the required *prima facie* showing of personal jurisdiction over Birch and Williamson under § 302(a)(3)(ii). For this reason, the Court need not address the additional jurisdictional requirement under that provision that Birch and Williamson derive substantial revenue from interstate commerce.

Further, in light of the Plaintiff's failure to meet his burden of proof as to a statutory authority for personal jurisdiction over Birch and Williamson, the Court declines to address whether the exercise of personal jurisdiction over them would comport with due process under the Fourteenth Amendment to the United States Constitution. The Court also need not address Birch and Williamson's alternative request in their memorandum in opposition to the motion to dismiss that, in the event this Court denies their motion to dismiss *in toto*, it transfer this action to the United States District Court for the Eastern District of Pennsylvania.

Finally, the Court *sua sponte* declines to allow jurisdictional discovery on this issue. While the Court recognizes its discretion to allow jurisdictional discovery, the Plaintiff "has not identified any hitherto inaccessible information that might aid it in establishing personal jurisdiction. The Court therefore sees little reason to burden [Birch and Williamson] with even narrowly tailored discovery." Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P., 13 CIV. 1654 (RA), 2014 WL 2610608, at *9 n. 11 (S.D.N.Y. June 10, 2014).

### III. CONCLUSION

Based on the foregoing, it is hereby:

**ORDERED**, that the part of the motion by Birch and Williamson to dismiss the complaint as against them pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is denied; and it is further

19

**ORDERED**, that the part of the motion by Birch and Williamson to dismiss the complaint as against them pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction is granted; and it is further

**ORDERED**, that the complaint as against Birch and Williamson is dismissed without prejudice to renew in a jurisdiction over Birch and Williamson that may be obtained; and it is further

**ORDERED,** that the Plaintiff is directed to a file an amended caption consistent with this Decision and Order within 10 days within the Date of this Decision and Order.

**SO ORDERED.**

Dated: Central Islip, New York
September 23, 2014

                                                           *Arthur D. Spatt*
                                                        ARTHUR D. SPATT
                                                 United States District Judge